# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MELISSA ANN RILEY**, | Case No. 1:15-cv-01616-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security | |
| Defendant. | |

Howard D. Olinsky, OLINSKY LAW GROUP, 300 South State Street, Suite 420, Syracuse, New York, 13202; Mark A. Manning, 474 Willamette, #200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Sarah Moum, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA, 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Melissa Ann Riley ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed an application for DIB and SSI on April 20, 2012, alleging disability beginning June 20, 2010. AR 24. At the time of the initial filing, Plaintiff was 38 years old. AR 83. Plaintiff alleged disability due to severe depression; sleep apnea; post traumatic stress

disorder ("PTSD"); and back, neck, and shoulder problems. AR 218. The Commissioner denied

the claim initially and upon reconsideration; Plaintiff thereafter requested a hearing before an

Administrative Law Judge ("ALJ"). AR 24. An administrative hearing was held on

December 19, 2013, and the ALJ subsequently ruled that Plaintiff has not been disabled since the

alleged onset date of June 20, 2010. AR 44, 24. The Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner. AR 1-5. Plaintiff

now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

PAGE 4 – OPINION AND ORDER

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

First, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. AR 26. The ALJ then applied the sequential process. AR 26-36. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 20, 2010. AR 26. At step two, the ALJ found that Plaintiff has the following severe impairments: "lumbago [back pain] with bursitis [inflammation of the fluid-filled sacks in the joints], obesity, myalgias [muscle pain] and myositis [inflammation and degeneration of muscle tissue], obstructive sleep apnea, and depressive disorder with anxiety." *Id.* At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. AR 30. The ALJ found that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and carry no more than 20 pounds at a time and frequently lift or carry 10 pounds. She can stand and/or walk for about 6 hours in an 8-hour workday. Pushing/pulling is unlimited within weight restrictions listed. She can occasionally climb ramps or stairs but should avoid climbing ladders, ropes, and scaffolds. She can occasionally stoop, crouch, kneel, or crawl. She should avoid concentrated (2/3 or more) exposure to unprotected heights and use of moving machinery. She is capable of understanding, remembering, and performing instructions for 1-4 step tasks. She is capable of superficial social interaction with coworkers and

> supervisors in small group settings, and no more than occasional superficial interaction with the general public.

AR 31.

In reaching this decision, the ALJ gave great weight to the opinion of the non-examining state agency psychological consultant, Robert Henry, Ph.D. (AR 34), some weight to the opinion of non-examining state agency medical consultant, Martin Kehrh, M.D. (AR 33), and little weight to the mental capacity and RFC assessments of Jeff Sewing, Physician Assistant ("PA") (AR 29, 34). The ALJ also found Plaintiff's statements about the "intensity, persistence and limiting effects of [her] symptoms" not to be entirely credible based on the record. AR 33.

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as an office helper. AR 34. In addition, the ALJ obtained testimony from a vocational expert ("VE") about Plaintiff's ability to perform other jobs that exist in the national economy. AR 35-36. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to work in a variety of other sedentary positions including as a document preparer, bench hand, or sewing machine operator. *Id.* The ALJ thus made the alternative step five finding that Plaintiff could work in positions that exist in significant numbers in the national economy. AR 36. In conclusion, the ALJ found Plaintiff has not been under disability after the alleged onset date of June 20, 2010. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly finding Plaintiff's symptom testimony not fully credible; (B) affording only little weight to the opinion of Mr. Sewing, PA; and (C) posing an incomplete hypothetical question to the VE.

**A. Plaintiff's Credibility**

Plaintiff contends that the ALJ's credibility determination was not supported by substantial evidence.[1] There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

---

[1] The Court notes that, pursuant to Social Security Rule ("SSR") 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's February 2014 decision was issued more than one year before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling, including whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

      The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* Social Security Rule ("SSR") 16-3p, *available at* 2016 WL 1119029 (retaining

the same factors for the for the ALJ to consider in his credibility determination as SSR 96-7p).

The ALJ may not, however, make a negative credibility finding "solely because" the claimant's

symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*,

466 F.3d at 883.

      Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, . . . other testimony by the claimant that appears less than

candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision

may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the hearing, Plaintiff testified that she is unable to work due to her frequent need to rest, her headaches and nausea, her physical pain, her mental health problems, and her sleep apnea. AR 57-67. Plaintiff stated that she does work around the house, but can only do so for 10 or 15 minutes before she needs a 15-minute break. AR 57-58. She declared that she spends about 60 percent of the day taking naps or lying down. AR 60. Plaintiff also testified that she avoids social functions because they trigger her anxiety. AR 58. She stated that when she is around five or more people her heart races, she gets shaky, and she feels stressed out. AR 59. To stop the symptoms, Plaintiff removes herself from the situation. *Id.* Plaintiff testified that she has been diagnosed with major depressive disorder, anxiety, and PTSD, and that she sees a therapist for these mental health issues. AR 65. She stated that she experiences meltdowns every day where she cries, and that she yells at her boyfriend and children. AR 67. Plaintiff also testified that she experiences pain in her entire body about 50 percent of the time, and that she has been diagnosed with fibromyalgia. AR 60-61. Plaintiff stated that she has migraine headaches about once a month, but also suffers from other headaches on a regular basis. AR 62-63. Finally, Plaintiff discussed her sleep apnea, which makes it hard for her to stay awake or concentrate. AR 65.

The ALJ found that the back pain, obesity, muscle pain, sleep apnea, and depressive disorder with anxiety were severe impairments, and that the "impairments could reasonably be expected to cause the alleged symptoms." AR 26, 33. Nevertheless, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" not entirely credible. AR 33.

Plaintiff argues that the ALJ "failed to engage in any discussion of [the] factors" listed in 20 C.F.R. §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3) in making his credibility determination. The Court disagrees. The ALJ explicitly noted that he considered these factors in evaluating Plaintiff's testimony, and gave specific reasons for rejecting Plaintiff's testimony. AR 32-33. The ALJ pointed to: (1) inconsistencies between Plaintiff's allegation that she experiences daily "meltdowns" and panic attacks in the presence of five or more people and her statements to her providers; (2) inconsistencies between Plaintiff's testimony about her depression and anxiety and her mental health treatment notes; (3) the inconsistency between the number of injections Plaintiff alleged she received for migraines in one year and the actual number of injections received; (4) inconsistencies between Plaintiff's testimony about her sleep schedule and the record; and (5) Plaintiff's reason for ending her previous employment and her continued search for employment.

Plaintiff only cites evidence in opposition to one of these reasons—the inconsistency involving the injections. The Court analyses each of the reasons given by the ALJ.

### 1.  Meltdowns and Panic Attacks

The ALJ first discussed Plaintiff's testimony that she gets panic attacks in groups of people and has "meltdowns" every day, observing that mental health treatment records from Klamath Open Door ("KOD") and the Klamath County Mental Health ("Klamath County") showed "relatively brief periods of difficulties that improve with treatment." AR 33. In July 2009, Plaintiff discussed her meltdowns with her therapist. AR 382. By August 2009, Plaintiff's therapist at KOD noted that Plaintiff was no longer having these meltdowns, and that she was better able to concentrate. AR 379. Similarly, March 2012 records from Klamath County include Plaintiff's report that she had difficulty getting out of bed and was excessively tearful. AR 271. By June 2013, her mood was improved and she was no longer crying all the time. AR

PAGE 10 – OPINION AND ORDER

517. In these records, there is no mention of Plaintiff experiencing panic attacks around groups of people.

An ALJ may consider "prior inconsistent statements concerning the symptoms" in making a credibility determination. *Smolen*, 80 F.3d at 1284. Plaintiff's testimony about her panic attacks was not corroborated by the record, and her statements about daily meltdowns are not entirely in line with her mental health treatment notes. The ALJ thus provided a clear and convincing reason for rejecting Plaintiff's credibility.

### 2. Depression and Anxiety Symptoms

The ALJ also reviewed Plaintiff's mental health record generally and concluded that Plaintiff has "experienced some waxing and waning of her mental health symptoms," but has generally responded well to treatment. AR 33. Although Plaintiff testified that she receives treatment for depression and anxiety, the ALJ observed that that Plaintiff's symptoms were described as "situational" in 2010. AR 354. Additionally, when she returned to mental health treatment at KOD after seven months without medication, Plaintiff was focused on anger as her main problem, and did not mention anxiety or depression. AR 341. By August 2011, Plaintiff's therapist discussed the termination of their treatment relationship because Plaintiff "made steady improvement and [was] now able to state her needs." AR 320. The ALJ noted that Plaintiff sought additional treatment with Klamath County in 2012, and by October of that year came in simply for a medication refill as she reported "no problems." AR 416. Finally, the ALJ noted that Plaintiff was "doing well" psychologically after she experienced a miscarriage. AR 616.

As the ALJ stated, the Ninth Circuit has held that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). As early as November 2009, Plaintiff reported missing work due to her depression and anxiety. AR 372. Her mood improved in

December 2009, but in January 2010 she became tearful when discussing her deceased father and sister. AR 370, 369. She reported being badly depressed in May 2010, and when she returned to Oregon in 2011 described her constant sadness to her therapist. AR 353, 342. Symptoms of depression reappeared regularly through the rest of 2011. AR 330, 328, 320, 307. In August 2012, Plaintiff was described as "[n]egative for depression" (AR 432), but by April 2013 Plaintiff had multiple stressors in her life and she presented as "depressed and tearful" (AR 522).

An ALJ may not "cherry pick" from mixed results. *See Oshodi v. Holder*, 729 F.3d 883, 893 (9th Cir. 2013). Plaintiff's symptoms have indeed waxed and waned over the course of several years, and her depressed periods cannot be ignored. The ALJ focused on the evidence describing Plaintiff's improvements, and did not evaluate the extensive evidence involving her symptoms of depression. Accordingly, the ALJ's conclusion that Plaintiff's testimony regarding her depression and anxiety is contradicted by her treatment records is not supported by substantial evidence in the record and is therefore not a clear and convincing reason to reject Plaintiff's testimony.

### 3. Injections

At the hearing in December 2013, Plaintiff testified that she had gone to the ER and received a shot for migraine pain about four times in the previous year. AR 63. The ALJ noted, however, that Plaintiff only ever received one injection from the ER, and that had been a year and a half before the hearing, in June 2012. AR 33, 600-01. Plaintiff points to three other instances when she received an injection for migraine symptoms. In May 2011, Dr. Brandon Chase administered a Toradol injection to Plaintiff for her migraine. AR 334-37. There is a note from November 2011 in the KOD records that Plaintiff "tolerated [the] injection well," although

the type of injection is not specified. AR 307. Finally, in April 2012, Plaintiff received a Toradol

injection at KOD for a headache lasting two days. AR 282.

The ALJ is allowed to consider "ordinary techniques of credibility evaluation" in

determining Plaintiff's credibility, including "testimony by the claimant that appears less than

candid." *Smolen*, 80 F.3d at 1284. Plaintiff's statement about the number of injections received at

the ER for migraine symptoms was not entirely accurate, yet it was not necessarily "less than

candid." Plaintiff testified that she went to the ER for a migraine shot "probably about four

times" in the year leading up to the hearing. AR 63. Her testimony shows that she wasn't sure

about the number of times, and merely gave her best guess. In addition, Plaintiff had received at

least three injections for migraine headaches in the three years prior to the hearing, although they

were not all received at the ER. The discrepancy between Plaintiff's testimony and the number of

injections is not a clear and convincing reason for discrediting Plaintiff.

### 4. Sleep Schedule

The ALJ next discounted Plaintiff's testimony based on a supposed discrepancy between

her testimony about napping and the record. Specifically, the ALJ noted that Plaintiff "testified

to needing to nap every day at least 4-5 hours due to her sleep apnea and fibromyalgia." AR 33.

At the hearing, Plaintiff stated that she spends "about 60 percent" of the day either

napping or lying down. AR 60. Plaintiff did not testify that she spends four or five hours napping

in particular—she only noted that she sleeps "a lot." *Id.* The ALJ did not have a means of

determining how much of the "60 percent" Plaintiff spends napping versus simply lying down.

The ALJ cited treatment records as inconsistent with Plaintiff's testimony because although she

complained of fatigue, there was "no mention of the level of napping she testified to at the

hearing." AR 33. The Court finds that the records are not inconsistent with Plaintiff's statements

at the hearing. In February 2013, Plaintiff complained of "more fatigue," although she did not

say how many hours she spent napping each day. AR 621. In August 2013, Plaintiff did specify

that she naps between one and four hours daily. AR 608. The ALJ found that there was no

complaint by Plaintiff of "needing to nap 3-4 hours a day" even before she began sleep apnea

treatments, but records from the Klamath Sleep Medicine Center, which the ALJ cited, directly

contradict this statement. At Plaintiff's initial consultation for sleep problems in January 2012,

she specifically told Dr. David Panossian that she "naps daily for 2-4 hours." AR 500.

The ALJ interpreted Plaintiff's "60 percent" statement to include four or five hours of

napping daily, which is not necessarily an accurate reflection of Plaintiff's testimony. In

addition, the ALJ misstated the record regarding Plaintiff's napping schedule before she began

sleep apnea treatments. The ALJ's conclusion that there is a contradiction between Plaintiff's

statements regarding her need to take naps and her treatment records is not supported by

substantial evidence in the record. Accordingly, it does not constitute a clear and convincing

reason for finding Plaintiff not credible.

### 5. Employment Developments

The ALJ considered it "significant" that Plaintiff stopped working because she moved to

Illinois and not because of any work-related impairment. AR 33, 352. The ALJ noted that

Plaintiff continued to look for work in March 2011, nine months after the alleged disability onset

date of June 20, 2010, and only stopped her search because she had no gas or car insurance.

AR 33, 344-45, 322-23.

Evidence that a claimant was no longer working for reasons other than the alleged

impairment may provide reason for an ALJ to discredit that plaintiff's testimony. *See Harrelson

v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (finding that the ALJ did not err in discrediting

the plaintiff's pain testimony because she quit work for religious reasons rather than due to an

impairment); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (among the

PAGE 14 – OPINION AND ORDER

"specific, cogent reasons" for disregarding the plaintiff's testimony were his statements that he was laid off, not injured), *as amended* (Nov. 9, 2001); *Carroll v. Colvin*, 2014 WL 4102314, at *7 (D. Or. Aug. 18, 2014) (holding that the ALJ was "entitled to reject" the plaintiff's symptom testimony because he stopped working after he was laid off, not due to his allegedly disabling conditions).

At the time Plaintiff quit her job, she stated that she hoped "job opportunities [would] be better" in Illinois. AR 352. She later returned to Oregon and attempted to return to school, but that only lasted approximately a week. AR 345. In March 2011, Plaintiff reported that she continued to look for work, and in May 2011 Plaintiff had an application in at a hotel. AR 345, 338. Plaintiff did not, however, reach out to her former Oregon employer to see if she could be rehired. AR 345. The ALJ considered the record and presented substantial evidence for discrediting Plaintiff's testimony. Because the Plaintiff quit work in order to move to Illinois rather than for an alleged impairment, the ALJ provided a clear and convincing reason for discounting Plaintiff's credibility.

### 6.  Conclusion

Although not all of the reasons provided by the ALJ in discrediting Plaintiff's testimony were supported by substantial evidence, the ALJ provided two clear and convincing reasons. Because the ALJ provided two valid reasons, the ALJ did not err in evaluating Plaintiff's credibility. *Batson*, 359 F.3d at 1197.

## B.  The Opinion of Mr. Sewing

Plaintiff argues that the ALJ erred by discounting the opinion of Mr. Sewing, PA. The Commissioner counters that the ALJ provided a germane reason for discounting Mr. Sewing's opinion and hence did not err.

SSR 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Mr. Sewing is a physician's assistant, he is considered an "other" medical source.

An ALJ may not reject the competent testimony of other medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of other medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Other medical sources are a type of lay testimony, and an ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the

ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ analyzed the mental capacity assessment ("MCA") and residual functional capacity questionnaire ("RFCQ") that Mr. Sewing completed on August 20, 2013. Among other determinations, Mr. Sewing found that Plaintiff could lift and carry less than ten pounds frequently, that she could sit for 20 minutes at a time for a total of four hours in an eight-hour workday, and that she could stand or walk for 20 minutes at a time for a total of two hours in an eight-hour workday. AR 641. Mr. Sewing also determined that Plaintiff would require breaks in excess of the regularly scheduled breaks, and that Plaintiff would likely miss four or more days per month of work. AR 638, 641-42. The ALJ gave Mr. Sewing's opinions in the MCA and RFCQ little weight based on three main reasons:[2] (1) at the time he made his findings, Mr. Sewing did not perform a physical examination of the Plaintiff; (2) when Mr. Sewing performed a physical examination at a later appointment, the exam was fairly unremarkable; and

---

[2] The ALJ also stated that Mr. Sewing is not an acceptable medical source as defined in 20 C.F.R. §§ 404.1513, 416.913. As explained by the Court, Mr. Sewing's status as an "other" medical source requires that the ALJ only need provide a germane reason for discrediting Mr. Sewing's opinion. Mr. Sewing's status is not, in and of itself, a germane reason to discount his opinion.

(3) Mr. Sewing's opinion was based on Plaintiff's self-report. The Court addresses each reason in turn.

## 1. Lack of Physical Examination on Evaluation Date

The ALJ found it significant that at the time Mr. Sewing completed the MCA and RFCQ, Mr. Sewing did not perform a physical examination of Plaintiff. AR 34. Instead, Mr. Sewing reported that Plaintiff had fibromyalgia with an elevated CRP (C-reactive protein), which could have been caused by her pregnancy earlier in the year. AR 608. Mr. Sewing did, however, perform a 40-minute evaluation of Plaintiff in order to determine her "disability potential." *Id.* Mr. Sewing's treatment notes and 40-minute evaluation were sufficient to evaluate Plaintiff's mental health, as a physical examination would have no bearing on this assessment. Regarding Mr. Sewing's evaluation of Plaintiff's physical abilities, although Mr. Sewing did not conduct a physical examination on that day, he had evaluated Plaintiff's physical symptoms and limitations multiple times in the months leading up to August 20, 2013. *See* AR 618-19, 620-21, 622-23. The Court is skeptical that a lack of physical examination on the date of evaluation by a treating provider who had previously performed several physical examinations qualifies as a germane reason for rejecting that evaluation. ALJs often give great weight to reviewing physicians who never have the ability to examine a claimant. Notably, the ALJ in this case gave the opinion of Dr. Henry great weight despite its lack of contemporaneous examination—or for that matter, any examination at any point—of Plaintiff. AR 34. Nevertheless, the Court does not need to determine whether a lack of contemporaneous examination is a germane reason because the ALJ gave a different germane reason for discounting Mr. Sewing's opinion.

## 2. Subsequent Physical Examination

The ALJ noted that when Mr. Sewing performed a physical examination of Plaintiff one month after Mr. Sewing completed his RFCQ, the exam was "fairly unremarkable other than

some tender muscles, with normal strength, sensation, and range of motion." AR 34. In Mr.

Sewing's functional limits assessment conducted on September 24, 2013, he determined that

Plaintiff had tenderness in some areas, but no joint swelling or heat. AR 633. Fibromyalgia's

symptoms, however, are subjective. *Rollins v. Massanari*, 261F.3d853, 855 (9th Cir. 2001).

"Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue,

stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue

associated with this disease." *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004). The

American College of Rheumatology created a set of diagnostic criteria in 1990, but there are no

laboratory tests able to confirm a diagnosis of fibromyalgia. *Id.* at 590.

Since early 2013, Plaintiff consistently complained of pain throughout her entire body, as

well as tenderness in the joints. *See* AR 623-24, 621-22, 619-20, 628-29, 634-35. As such, the Court

does not view a single "unremarkable" examination as a germane reason for the ALJ to discredit

Mr. Sewing's mental capacity and RFC assessments.

### 3. Plaintiff's Self-Report

The ALJ also considered it "clear" that Mr. Sewing based his opinion on Plaintiff's self-

report. AR 34. Plaintiff told Mr. Sewing in her evaluation on August 20, 2013 that she would

"probably miss" four or more days of work per month. AR 608. In both the MCA and the RFCQ,

Mr. Sewing reported that Plaintiff would have four or more absences per month from work.

AR 638, 642. Similarly, in Mr. Sewing's RFCQ, he indicated that Plaintiff can only sit for 20

minutes at a time and stand or walk for 20 minutes at a time (AR 641), while Plaintiff stated at

the administrative hearing that she is able to do activities around the house for 10 or 15 minutes

at a time before she needs to rest (AR 58). Mr. Sewing does not identify any objective basis for

these conclusions, and they appear to be solely based on Plaintiff's self report. The fact that

Mr. Sewing relied on Plaintiff's subjective statements when Plaintiff has not been found entirely

credible is a germane reason for giving little weight to these opinions. *Molina*, 674 F.3d at 1114-15. Thus, the ALJ did not err in giving little weight to Mr. Sewing's opinion in the MCA and RFCQ.

**C. Question Posed to the Vocational Expert**

Plaintiff argues that the ALJ posed an incomplete hypothetical question to the VE based on a failure to afford the proper weight to the opinion of Mr. Sewing. As determined above, however, the ALJ provided a germane reason for giving little weight to Mr. Sewing's MCA and RFCQ opinions. The ALJ consequently properly limited the hypothetical "to those impairments that are supported by substantial evidence in the record," and did not err. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989)).

**CONCLUSION**

The Commissioner's decision is based on substantial evidence in the record, and the ALJ's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge